## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| FOR THE USE AND BENEFIT OF | ) | |
| A.C.W., INC., | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | CIVIL ACTION FILE NO. |
|  | ) | _____ |
| v. | ) | |
|  | ) | |
| ASHFORD LEEBCOR | ) | |
| ENTERPRISES, LLC AND | ) | |
| THE CINCINNATI INSURANCE | ) | |
| COMPANY | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **COMPLAINT**

COMES NOW the United States of America for the Use and Benefit of A.C.W. Inc. ("ACW"), by and through its undersigned counsel, and submits this Complaint, brought under the United States Miller Act, 40 USC § 3131, et seq. (the "Miller Act"), against Ashford Leebcor Enterprises, LLC ("Ashford Leebcor") and The Cincinnati Insurance Company ("Cincinnati"))(collectively the "Defendants") and states as follows:

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

1.

ACW is a Georgia corporation and subjects itself to the jurisdiction of this Court.

2.

Ashford Leebcor is a foreign limited liability company organized and existing pursuant to the laws of the State of Virginia, and may be served with process through its registered agent, Corporation Service Company, located at 100 Shockoe Slip Fl 2, Richmond, Virginia, 23219.

3.

Cincinnati is a foreign insurance company organized and existing pursuant to the laws of the State of Ohio, and may be served with process through its registered agent, Bernie Kistler, located at 3740 DaVinci Court, Suite 460, Peachtree Corners, Gwinnett County, Georgia 30092.

4.

This Court has jurisdiction over the parties and subject matter jurisdiction over the claims alleged in this action pursuant to the Miller Act.

5.

Venue is proper in this Court as the location of the United States government construction project where the unpaid work was performed is physically located in

this judicial district and division.

6.

All conditions precedent to the bringing of this action, if any, have been performed, have occurred, or have been waived.

## COUNT ONE
## MILLER ACT CLAIM AS TO ACW AND CINCINNATI

7.

ACW incorporates the allegations set forth in Paragraphs 1-6 as if each allegation was restated fully herein.

8.

Ashford Leebcor is the general contractor for a United States government construction project known as Repair Building 399, Sections A&G, Fort Benning, Georgia, having Contract Number W912HN19C3011(the "Project").

9.

Ashford Leebcor is the principal and Cincinnati is the surety on a payment bond ("Bond") for the Project issued pursuant to 40 USC § 3131 and having bond number B 3252259.  A true and accurate copy of the Bond is attached hereto as Exhibit "1" and is incorporated herein by reference.

10.

On or about December 2, 2019, ACW entered into a written contract ("Contract") with Ashford Leebcor for ACW to supply labor and materials to

complete the gypsum board assemblies, acoustical ceiling systems, and insulation requirements for the Project, as more specifically defined in the Contract which is attached hereto as Exhibit "2" and incorporated herein by reference.

## 11.

ACW supplied materials and labor to the Project and has completely if not substantially completed its obligations pursuant to the aforementioned Contract.

## 12.

The original Contract price was $3,756,000.00 and changes increased the original Contract price by $181,115.80, resulting a final Contract price of $3,937,115.80.

## 13.

Ashford Leebcor has paid ACW the sum of $3,568,248.34, leaving a balance due and owing of $368,867.46.

## 14.

ACW has demanded payment from Ashford Leebcor; however, Ashford Leebcor has failed and refused to pay ACW.

## 15.

ACW instituted this action within one year from the last date it supplied labor and materials to the Project.

16.

ACW is entitled to recover from Ashford Leebcor and Cincinnati, jointly and severally, under the terms of the Miller Act, the principal sum of $368,867.46 along with interest at the rate allowed by law.

<u>COUNT TWO</u>
<u>BREACH OF CONTRACT AS TO ASHFORD LEEBCOR</u>

17.

ACW incorporates the allegations set forth in Paragraphs 1-16 as if each allegation was restated fully herein.

18.

ACW entered into the Contract with Ashford Leebcor for the Project.

19.

ACW supplied materials and labor to the Project and has completely if not substantially completed its obligations pursuant to the aforementioned Contract.

20.

ACW is owed the principal sum of $368,867.46 for labor and materials provided to the Project.

21.

Despite demand, Ashford Leebcor has failed and refused to pay ACW.

22.

Ashford Leebcor's failure to pay ACW is a breach of the Contract.

23.

ACW is entitled to recover from Ashford Leebcor under the terms of the Contract, the principal sum of $368,867.46 along with interest at the rate allowed by law.

## COUNT THREE
## ATTORNEY'S FEES AS TO ASHFORD LEEBCOR

24.

ACW incorporates the allegations set forth in Paragraphs 1-23 as if each allegation was restated fully herein.

25.

Pursuant to O.C.G. A. § 13-6-11, Ashford Leebcor has has been stubbornly litigious, acted in bad faith, and have caused ACW unnecessary trouble and expense for which it seeks an award of attorney fees.

WHEREFORE, ACW prays as follows:

1. That ACW have and recover judgment against Defendants, jointly and severally, based on its Miller Act Claim, in the principal amount of $368,867.46, plus interest at the rate allowed by law;

2. That ACW have and recover judgment against Ashford Leebcor, based on its breach of contract claim, in the principal amount of $368,867.46, plus interest at the rate allowed by law;

3. That the costs of this action, including court costs and attorneys' fees be taxed against Ashford Leebcor;

4. ACW have such other and further relief as the Court may deem just and proper; and

5. ACW have a trial by a jury.

Respectfully submitted, this 12th day of July, 2023.

*/s/  Andrew J. Becker*
David J. Merbaum
dmerbaum@mbpclaw.com
Georgia Bar Number: 006700
Andrew J. Becker
abecker@mbpclaw.com
Georgia Bar Number: 142595
**Attorneys for Plaintiff**

**Merbaum & Becker, P.C.**
5755 North Point Parkway, Suite 284
Alpharetta, Georgia 30022
Telephone:  (678) 393-8232
Facsimile:  (678) 393-0410

Bond No.: B 3252259

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) September 12, 2019 | OMB Control Number: 9000-0045 Expiration Date: 8/31/2022 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

**PRINCIPAL** (Legal name and business address)

Ashford Leebcor Enterprises, LLC

1769 Jamestown Road, Suite 112

Williamsburg, VA 23185

**TYPE OF ORGANIZATION** ("X" one)

[ ] INDIVIDUAL  [ ] PARTNERSHIP  [ ] JOINT VENTURE

[ ] CORPORATION  [X] OTHER (Specify) LLC

**STATE OF INCORPORATION** VA

**SURETY(IES)** (Name(s) and business address(es))

The Cincinnati Insurance Company

P.O. Box 145496

Cincinnati, OH 45250-5496

Surety Phone No. 513-870-2000

Document Reviewed & Approved for Legal Sufficiency.

*Lisa White* 10/4/19

Attorney                              Date

Office of Counsel

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 28 | 605 | 776 | 00 |

| CONTRACT DATE | CONTRACT NUMBER |
|---|---|
| 9/12/2019 | W912HN19C3011 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Ashford Leebcor Enterprises, LLC | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *John E. Karafa* (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. JOHN E. KARAFA PRESIDENT OF LEEBCOR SERVICES, LLC AND PARTNER MEMBER OF ASHFORD LEEBCOR ENTERPRISES | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | |
| NAME(S) (Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | The Cincinnati Insurance Company P.O. Box 145496 Cincinnati, OH 45250-5496 | STATE OF INCORPORATION OH | LIABILITY LIMIT $441,889,000 |
| | SIGNATURE(S) | 1. | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. Chelsea Souza Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

**STANDARD FORM 25A (REV. 8/2016)**
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

EXHIBIT 1

## CORPORATE SURETY(IES) *(Continued)*

| SURETY B | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY C | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY D | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY E | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY F | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

| SURETY G | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

    (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

    (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.



<u>**SUBCONTRACT AGREEMENT**</u>
<u>**FIRM FIXED PRICE**</u>

<u>**A.C.W. INCORPORATED**</u>

## <u>INTRODUCTION</u>

This Subcontract Agreement No. **2019-001-008** ("Agreement"), effective **December 2, 2019** is made between ASHFORD LEEBCOR ENTERPRISES, LLC (hereinafter known as "Buyer"), a Virginia Limited Liability Company with an office at 1769 Jamestown Rd., Suite 112, Williamsburg, VA  23185, and **A.C.W. INCORPORATED** (hereinafter known as "Seller"), with an office at 1420 Concord Blvd., Columbus, GA 31904.  This Agreement shall govern Seller's performance of services (hereinafter referred to as "Work" or "Services") under **Contract No. W91278-16-D-0033,  Task Order No. W912HN-19-C-3011 entitled, "Repair Building 399, Sections A & G, Fort Benning, GA" dated July 2019 with the US Army Corps of Engineers, Savannah Office.**

## 1.    <u>STATEMENT OF WORK / SUBCONTRACTOR PROPOSAL</u>

Seller shall provide all labor, materials, equipment and supervision to perform the Subcontractor Detailed Scope of Work set forth in **Exhibit 1**, attached to and made a part of this Agreement, and in accordance with the schedule set forth therein.  Seller is responsible for information on the **RFP No. W912HN-19-R-3006, Amendments 01-05 entitled, "Repair Building 399, Sections A & G, Fort Benning, GA" dated July 2019 under Contract No. W91278-16-D-0033, Task Order No. W912HN-19-C-3011 with the US Army Corps of Engineers, Savannah Office.**  Instructions for accessing plans, specifications and amendments can be found in **Exhibits 2-5**. The 'seller' shall follow the 'buyers' construction schedule and man the project to maintain this and increase manpower should the 'seller' fall behind.

## 2.    <u>PRIME CONTRACT/SPECIAL PROVISIONS</u>

Work performed under this Agreement will be in furtherance of work undertaken by Buyer under a prime contract ("Prime Contract") between Buyer and US Army Corps of Engineers ("Buyer's Client"). As such, Seller shall be bound to terms and conditions contained in the Prime Contract to the same extent as Buyer is bound to Buyer's Client under the Prime Contract. A copy of any such terms and conditions ("Prime Contract Flow down Provisions") pertinent to Seller's responsibilities are hereby included in **Exhibit 5** attached.

In addition, any special provisions ("Special Provisions") applicable to this Agreement are attached to and made a part of this Agreement as **Exhibit 6-12**. Examples of these provisions include, but are not limited to, Payment and/or Performance Bonds, Lien Waivers, SF 1413, Davis-Bacon Wage Decisions, Certified Payroll Requirements, and the Buy American Act. When a provision of this Agreement contradicts a provision of the Prime Contract Flow-Down Provisions or Special Provisions, the more stringent provision shall control.

## 3.    <u>AGREEMENT TYPE AND AMOUNT</u>

This is a firm-fixed-price type Agreement in the amount of <u>**Three Million Seven Hundred Fifty-Six Thousand Dollars and Zero Cents ($3,756,000.00), bond included.**</u> (See Exhibit 1 for details).  Unless the amount of this Agreement is modified in writing by mutual agreement of the parties, Buyer is not

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033
2019-001-008 A.C.W. INCORPORATED

Repair Bldg 399, Sections A & G
Fort Benning, GA

Seller's Initials

1


EXHIBIT 2



obligated to compensate Seller beyond the stated amount.   **A Schedule of Values from the Seller shall be required for approval by the Buyer to establish an acceptable payment schedule.**

**4.    PERIOD OF PERFORMANCE**

The term of this Agreement is shown in **Exhibit 1**.  The contract period of performance cannot change unless modified in writing by mutual agreement of the parties or terminated pursuant to the terms of this Agreement.

**5.    INVOICES AND PAYMENT TERMS**

Invoices **MUST** be submitted monthly via **email to invoices@leebcor.com 5 days prior to the end of the monthly billing period** for work progress verification. Monthly Invoices submitted **AFTER** the **project billing period due date** shall be considered late and **WILL NOT** be processed until the following month's billing cycle.

Invoices will clearly reference the Agreement number and Project number identified above. Invoices shall include the "Amount Previously Billed"," the "Amount of this Invoice", the "Amount of Retainage **(0%)"** and the "Total Amount Billed to Date."

Invoices may be submitted not more frequently than monthly. Periodic (monthly) invoices must be submitted within 5 days prior to the end of the monthly billing period **(Project Billing Ends on the 20th day of the month, submit to Buyer on the 15th of the month projecting work completed to the end of the monthly billing period)** and include a signed and completed Partial Waiver and Release of Liens in form acceptable to Buyer. (See Exhibit 7 for form)  **ALL Invoices MUST be submitted to invoices@leebcor.com  no later than the 15th of the month for work progress verification.**  A Schedule of Values from the Seller shall be required for approval by the Buyer to establish an acceptable payment schedule.  Final invoices must be submitted within 60 days of the end of the period of performance and include a signed and completed Final Waiver and Release of Lien in form acceptable to Buyer (See Exhibit 7 for Form).  Invoices received more than 60 days from the end of the period of performance will not be paid.

Payment on Seller's invoices will be made within 30 days of Buyer's receipt of payment from Buyer's Client when such payment includes payment for amounts properly invoiced by Seller. Buyer's receipt of payment from Buyer's client is a condition precedent to payment from Buyer to Seller. Seller's right to payment is contingent upon Buyer's approval and acceptance of the Work, but payment shall not be evidence of Buyer's final acceptance of the Seller's Work. Payment shall be subject to subsequent adjustment for shortage and allowance for articles or services rejected.   If payment to Buyer from Buyer's Client is delayed for reason(s) solely attributable to Buyer, and not Seller, then the Seller will be paid within 30 days of the date of the approved invoice from Seller.

Seller agrees that payments owed to Buyer for performance hereunder may be offset by amounts equal to what Seller owes Buyer under any other contract arrangement between Buyer and Seller. This provision does not apply (1) where there are contractual and/or regulatory restrictions on offsets or (2) where payment on amounts owed Buyer is due to a reasonable dispute.

During the term of this Agreement, and for three years thereafter, Buyer and/or its representatives shall have the right to conduct audits of Seller's records, financial or otherwise, to the extent that they

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033                    Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED              Fort Benning, GA                    Seller's Initials

2



relate to this Agreement. Seller shall maintain all such records until the termination of Buyer's rights hereunder.

6.    **TECHNICAL AND CONTRACTUAL REPRESENTATIVES**

Correspondence or discussions, which affect the price, schedule, terms and conditions, or Subcontractor Detailed Scope of Work /Schedule of this Agreement, shall be made with the Buyer's authorized contractual representative. **No changes to this Agreement shall be binding upon Buyer unless incorporated in a written modification to this Agreement and signed by Buyer's contractual representative.**

The effort set forth in the Subcontractor Detailed Scope of Work will be performed under the technical direction of Buyer's technical representative. The technical representative is not authorized to change the price, Subcontractor Detailed Scope of Work, completion date, or contractual terms and conditions. If, in Seller's opinion, any technical direction constitutes a change to this Agreement, Seller shall give immediate written notice to Buyer's contractual representative. Until authorization to proceed with the change is granted by Buyer's contractual representative, Seller shall perform in accordance with this Agreement as written and unauthorized work is performed solely at Seller's risk and expense.

7.    **ASSIGNMENTS AND SUBCONTRACTS**

This Agreement may not be assigned or lower-tier subcontracts issued without the prior written consent of Buyer. This consent requirement shall not apply to the purchase of standard commercial supplies or raw materials.

8.    **WARRANTY AND DEFECTIVE WORK CURE**

All services shall be performed in a competent manner and shall reflect Seller's best professional knowledge, judgment and accepted industry practice. All articles, materials, work and services (hereinafter the "Work") shall at all times be subject to Buyer's review and inspection; but neither Buyer's review and inspection nor failure to review or inspect shall relieve Seller of any obligation hereunder. If, in Buyer's and Engineers opinion, the Work fails to conform to specifications or is otherwise defective or inadequate, upon notice to Seller, Seller shall, at Buyer's sole option, promptly replace, correct or re-perform same promptly and at Seller's expense. In the event that Buyer must re-perform or procure Work that has been deemed by Buyer as inadequate or insufficient, Seller shall incur all expenses of such re-performance or procurement. No acceptance or payment by Buyer shall constitute a waiver of the foregoing. Nothing herein shall exclude or limit any warranties implied by law.

9.    **COMPLIANCE WITH LAWS**

Seller agrees to fully observe and comply with all applicable local, state, and federal laws, regulations, and orders pertaining to the Work, including but not limited to, the Fair Labor Standards Act of 1938, Executive Order 11246, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Act of 1974, Executive Order 11625, and the Occupational Safety and Health Act of 1970.

10.    **INSURANCE**

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033                Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED              Fort Benning, GA              Seller's Initials

3



Without in any way limiting any of Seller's obligations, indemnities, or liabilities, Seller shall maintain at all times the following minimum insurance at Seller's expense: (a) Workers' Compensation Insurance - statutory limits, regardless of statutory exemption, coverage provided for all employees and owners, to include coverage for USL&H, if applicable; (b) Employer's Liability Insurance - limit of $1,000,000 each occurrence; (c) Commercial Automobile Liability Insurance - bodily injury and property damage combined single limit of $1,000,000, for all owned, hired, rented, leased, and non-owned automobiles; (d) Commercial General Liability Insurance (including contractual liability coverage) - bodily/personal injury and property damage, personal and advertising injury, products and completed operations - limit of $1,000,000 per occurrence, and $2,000,000 aggregate, limits apply per project, coverage is primary and non-contributory; (e) Professional Liability Insurance - $1,000,000 per claim - required if Seller will be professionally certifying a work product (drawings, plans, permit applications, etc.) or performing professional services such as surveying where an error or omission could affect the design of a project or impact a construction schedule; (f) Pollution Liability Insurance - $1,000,000 per claim - required if Seller will be (i) performing testing services and/or soil analysis which requires drilling beyond a depth of two feet or (ii) transporting or hauling hazardous waste; and (g) MCS-90 Endorsement to General and Auto Liability - required if Seller will be transporting or hauling waste material (regardless of classification).

In addition, Seller shall name Buyer (ASHFORD LEEBCOR ENTERPRISES, LLC.) and Buyer's client identified above as additional insured under the above (b), (c), (d – including coverage for products and completed operations per form CG 2010 11 85  or its equivalent), and (f) policies and so state on its certificate(s) of insurance. Seller shall provide a waiver of subrogation endorsement in favor of Buyer on the above (a) and (d) policies.  Prior to beginning Work, Seller shall provide Buyer with a certificate(s) of insurance evidencing all required coverage, and upon Buyer's request; Seller will provide Buyer with a certified copy of Seller's insurance policy (ies). The types and limits of insurance specified herein shall in no way limit Seller's liability under this Agreement.

**11.    STOP WORK OR TERMINATION FOR CONVENIENCE**
Buyer may, at its sole discretion, stop the Work or terminate the Work for its own convenience at any time. Where Seller is not in default hereunder, Buyer agrees to pay Seller for all work done in conformity with the requirements of this Agreement up to the point when the Agreement is terminated.

**12.    DEFAULT**
Time is of the essence in the performance by Seller of the Work. Buyer's right to require strict performance by Seller shall not be affected by any previous waiver, forbearance or course of dealing. If Seller breaches any provision hereof or becomes insolvent, enters bankruptcy, receivership or other like proceeding (voluntarily or involuntarily) or makes an assignment for the benefit of creditors, Buyer may, in addition to any other rights it may have hereunder or by law without any liability to Seller, (i) terminate all or part of this Agreement by giving Seller written notice and (ii) complete or procure the completion of the performance of the Work at Seller's expense. In such event title to any of Seller's work, whether completed or partially completed, and all materials prepared, procured or set aside by Seller for use in the Work, shall, at Buyer's option, vest in Buyer. Buyer may enter Seller's premises and remove the same there from. Seller shall be liable to Buyer for all costs incurred by

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033                     Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED                 Fort Benning, GA                Seller's Initials

4



Buyer in completing or procuring the completion of performance of the Work in excess of the price of the Agreement (whether or not Buyer exercises its option hereunder).

**13.    BONDS**

100% Performance and Payment Bond **IS** required prior to commencement of work by the Seller. See Exhibit 6 for acceptable bond forms. The Sellers bonding rate **IS** included in the value of the contract value and the Seller **IS** responsible for this fee.

**14.    DISPUTES**

Any dispute arising here under shall first be resolved by taking the following steps where a successive step is taken if the issue is not resolved at the preceding step: (1) by the technical and contractual personnel for each party performing this Agreement, (2) by executive management of each party, (3) by mediation, (4) by arbitration if both parties agree or (5) through a court system of competent jurisdiction. Notwithstanding the dispute, Seller shall continue to perform its obligations, unless Buyer terminates or otherwise suspends performance hereunder.

If a decision relating to the Prime Contract is made by the Buyer's Client and such decision is also related to this Agreement, said decision, if binding upon Buyer under the Prime Contract, shall in turn be binding upon Seller with respect to such matter. If Buyer elects to appeal any such decision of the Buyer's Client, Buyer agrees to promptly furnish Seller with a copy of such appeal. Any decision upon appeal, if binding upon Buyer, shall in turn be binding upon Seller. Pending the making of any decision, either by the Buyer's Client or on appeal, Seller shall proceed diligently with performance of this Agreement.

Seller agrees to provide certification that data supporting any claim made by Seller hereunder is made in good faith and that the supporting data is accurate and complete to the best of Seller's knowledge or belief, all in accordance with the requirements of the Contract Disputes Act of 1978 (41 U.S.C. 601-613) and implementing regulations, where applicable. If any claim of Seller is determined to be based upon fraud or misrepresentation, Seller agrees to defend, indemnify and hold Buyer harmless for any and all liability, loss, and cost or expense resulting there from.

In the event of any action arising out of or relating to this Agreement, each party shall bear its own costs and expenses, including attorney's fees, incurred in connection with such action.

**15.    TAXES**

Seller shall pay all sales, use, excise, gross receipts and other taxes, charges, and contributions now or hereafter imposed in any way on the Work furnished hereunder or the compensation paid to persons employed in connection with performance of the Work hereunder.

**16.    PROPRIETARY INFORMATION**

All reports, drawings, plans or other documents (or copies) furnished to Seller shall be returned upon completion of the Work. All reports, drawings, plans, or documents (or copies thereof) in any form prepared by Seller hereunder are prepared for the sole and exclusive benefit of the Buyer. Seller agrees it will keep confidential and not use any material, and documents (including but not limited to designs, sketches, specifications, drawings, computer programs and software, or other data or

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033                    Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED          Fort Benning, GA              Seller's Initials

5



information) generated hereunder or furnished by Buyer for any purpose whatsoever other than as herein specified.

**17.    OWNERSHIP OF WORK PRODUCT**

All technical data, evaluations, reports and other work products developed by Seller hereunder are Works Made for Hire and are the property of Buyer and shall be delivered to Buyer upon completion of the Work. Seller may retain copies thereof solely for its record keeping purposes. Buyer must first approve in writing any publication of information directly derived from the Work performed or data obtained in connection with services rendered hereunder.

**18.    PROPERTY**

All property furnished to Seller by Buyer, shall be returned to Buyer in good condition, reasonable wear only excepted, unless otherwise directed in writing by Buyer upon completion or termination of Seller's work. Property is to be marked for identification as Buyer may designate. Seller agrees to replace, at Seller expense, all such items not so returned. Seller shall make no charge for any storage, maintenance or retention of such property of Buyer. Seller shall bear all risk of loss for Buyer's property in Seller's possession.

**19.    INDEMNIFICATION - DEFECTIVE COST OR PRICING DATA AND COST ACCOUNTING STANDARDS**

Seller agrees to indemnify and hold Buyer harmless to the full extent of any price or cost reduction effected by Buyer's Client, which may result from (i) the cost or pricing data submitted by Seller or its lower-tier subcontractors, which is not accurate, current or complete as of the date submitted or certified by Seller; (ii) the failure by Seller or its lower-tier subcontractors to disclose and consistently follow applicable cost accounting practices and standards or otherwise comply with pertinent sections of the Federal Acquisition Regulation (FAR) and Defense FAR Supplement, and regulations promulgated by the Cost Accounting Standards Board, where applicable.

**20.    PATENTS / INFRINGEMENT INDEMNITY**

Whenever any invention or discovery is made or conceived by the Seller in the course of, in connection with, or under the terms of the Agreement, the Seller shall immediately furnish to Buyer complete information thereon. Buyer shall have the sole power to determine whether or not and where a patent application shall be filed and to determine the disposition of the title and the rights under any application or patent that may result. The judgment of Buyer on these matters shall be accepted as final. Seller agrees that it and its employees will execute all documents and do all things necessary or proper to carry out the judgment of Buyer. Seller shall indemnify and defend Buyer and Buyer's Client identified above against all claims, suits, liability, and expense alleging infringement of any patent, copyright, trademark or licensing agreement, resulting from or arising in connection with the manufacture, sale, normal use or other normal disposition of any article or material furnished hereunder. If the use or sale of said item is enjoined as a result of such suit, Seller, at no expense to Buyer, shall obtain for Buyer and Buyer's Client the right to use and sell said item or shall substitute an equivalent item acceptable to Buyer and extend this infringement indemnity thereto.

**21.    NON-WAIVER OF RIGHTS**

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033              Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED          Fort Benning, GA              Seller's Initials

6



Waiver by Buyer of any provision of this Agreement shall not constitute a waiver as to any other provision and shall not affect the right to thereafter exercise any right or remedy in the event of any other default, whether similar or not.

**22.    INDEMNIFICATION**

Notwithstanding any other provision of this Agreement, the Seller shall indemnify, defend and hold the Buyer and Buyer's Client identified above harmless from and against any and all liability, claims, demands, damages, fees, fines, expenses, and costs of every kind and nature for injury to, or death of, any and all persons (including, without limitation, employees or representatives of the Buyer, Buyer's Client, Seller, any subcontractor, or any other person or persons) and for damage to, or destruction or loss, consequential or otherwise, of any and all property, real or personal (including without limitation, property of the Buyer, Buyer's Client, Seller, any subcontractor, or of any other person or persons), resulting from or in any manner arising out of or in connection with the performance of the Work.  For the sake of clarity, the Parties agree that attorney's fees incurred by either party shall not be an element of loss subject to indemnification hereunder.

**23.    GENERAL RELATIONSHIP**

Seller agrees that in all matters relating to this Agreement it shall be acting as an independent contractor and shall assume and pay all liabilities and perform all obligations imposed with respect to the performance of this Agreement. Seller shall have no right, power or authority to create any obligation, expressed or implied, on behalf of Buyer and/or Buyer's Client and shall have no authority to represent Buyer as an agent.

**24.    GOVERNING LAW, VENUE, AND SEVERABILITY**

This Agreement is to be governed by and construed in accordance with the laws of the state of the Buyer's office entering into this Agreement. Any action instituted for the enforcement of this Agreement shall be resolved only in the federal or state courts of the state of the aforementioned Buyer's office. In the event that any of the provisions, portions, or applications of this Agreement is held to be unenforceable or invalid by a court of competent jurisdiction, the parties shall negotiate an equitable adjustment in the provisions of this Agreement with a view toward affecting the purpose of this Agreement. The validity and enforceability of the remaining provisions, portions, or applications shall not be affected.

**25.    LIENS**

Seller shall deliver the Work free and clear of any encumbrances and claims ("Liens"). Buyer may withhold payment pending receipt of a complete Waiver and Release of Liens from Seller. If any Lien remains unsatisfied after all payments are made, Seller shall reimburse Buyer for any and all costs and expenses (including attorney's fees and court costs) incurred by Buyer in discharging such Lien.

**26.    EXHIBITS**

The following Exhibits are attached and made a part of this Agreement: **Exhibit 1**: Subcontractor Detailed Scope of Work and Scope Sheet; **Exhibit 2**: Drawings; **Exhibit 3**:Specifications; **Exhibit 4**: Amendments; **Exhibit 5**: Flow Down Provisions or RFP; **Exhibit 6**: Payment and Performance Bonds; **Exhibit 7**: Lien Waivers; **Exhibit 8**: Form SF1413 Statement And Acknowledgment; **Exhibit 9**: Davis-





Bacon Wage Scale General Decision; **Exhibit 10:** Certified Payroll Instructions and Forms; **Exhibit 11:** Buy American Act**;** **Exhibit 12:** Certificate Of Insurance Requirements.

**27.    ORDER OF PRECEDENCE**
In the event of an inconsistency or conflict between or among the provisions of this Agreement and Construction Documents, the inconsistency shall be resolved by giving precedence to the stricter provision.

**28.    LIQUIDATED DAMAGES**
Liquidated damages for this contract are **One Thousand Four Hundred Fifty-Three Dollars and 00/100 Cents ($1,453.00)** for each calendar day the project is not completed on time.  If Buyer is delayed because of the Seller, then the Buyer will assess Liquidated Damages to the Seller**.**

**29.    SAFETY**
The 'seller' will comply with all OSHA requirements which will include but not be limited to; certifications, proper attire, notifications, material storage and comply with all government agency requirements. Should any incident occur, the onsite superintendent will be notified within 1 hour and the project manager will be notified in writing within 24 hours.

**30.    ENTIRE AGREEMENT**
The terms and conditions set forth in this Agreement, including all documents incorporated herein by reference, constitute the entire understanding of the Buyer and Seller. All previous proposals, offers, and other communications relative to the provisions of this Agreement are hereby superseded. Any modifications or revision of any provisions heretofore and any additional provisions contained in any proposal, acknowledgment or other form of the Seller is hereby expressly objected to by Buyer and shall not operate to modify the agreement.

**31.    PROGRESS MEETINGS**
The 'seller' project manager or superintendent will attend all progress meetings (every 2 weeks or as needed) while they have personal on site and the progress meeting two weeks prior to mobilizing.

**32.    CERTIFIED PAYROLL**
The "seller" is responsible for submitting the certified payroll for this project. **ALL certified payrolls MUST be submitted to the Project Coordinator within four (4) days of the work week completion.** The payroll forms must be submitted in the original form AND **emailed;** no faxed copies will be accepted. The certified payroll forms may be mailed to the office of Ashford Leebcor Enterprises, LLC or delivered to the office in person. *Please refer to Exhibit 9 for the Prevailing Davis Bacon Wage Scale for this project. Please refer to Exhibit 10 for Certified Payroll forms and instructions.*

**33.    OTHER REQUIREMENTS**
The 'seller' will comply with other project requirements to include but not limited to submittal data, product data, shop drawings, MSDS sheets and close out requirements.  Daily reports need to submit on a daily basis reflecting the personal onsite, material/equipment delivered to site and work performed that day.  Buyer retains the sole right to dismiss any personnel from the Project, permanently that is not conducting behavior in a professional manner consistent with the benefit of the Project and in the Buyer's best interest to Buyer's client.

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033                    Repair Bldg 399, Sections A & G
2019-001-008 A.C.W. INCORPORATED                Fort Benning, GA            Seller's Initials

8



In Witness Whereof, the duly authorized representatives of Buyer and the Seller have executed this Agreement as of the date first shown above.

| SUBCONTRACTOR:<br>A.C.W. INCORPORATED | ASHFORD LEEBCOR ENTERPRISES, LLC |
|---|---|
| SIGNATURE: | SIGNATURE: |
| PRINTED NAME: | PRINTED NAME:<br>**Shane Rogers** |
| TITLE: | TITLE:<br>**Senior Project Manager** |
| DATE: | DATE: |
| PHONE: | PHONE:<br>**(757) 220-5577/757-645-5696** |
| FAX: | FAX:<br>**(757) 565-0416** |
| TAXPAYER ID #: | |

## ACCEPTANCE OF THIS SUBCONTRACT

*The enclosed Subcontract Agreement contains the final and entire agreement and understanding between the Parties hereto, and is the complete, binding, and exclusive statement of its terms.  This Subcontract Agreement may be accepted by signing and returning a fully executed copy to ASHFORD LEEBCOR ENTERPRISES by* **December 18, 2019**.  *If* **A.C.W. Incorporated** *does not submit any proposed modifications to this Subcontract Agreement by* **December 18, 2019** *and/or by beginning performance on the work, whichever occurs first, this subcontract agreement shall be ratified.*

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033
2019-001-008 A.C.W. INCORPORATED

Repair Bldg 399, Sections A & G
Fort Benning, GA

Seller's Initials

9



**EXHIBIT 1**

SUBCONTRACT DETAILED SCOPE OF WORK

COMPANY: **A.C.W. INCORPORATED**

SIGNATURE:

PRINTED NAME:

TITLE:

DATE:

Fixed Price Subcontract Agreement
Contract #W91278-16-D-0033
2019-001-008 A.C.W. INCORPORATED

Repair Bldg 399, Sections A & G
Fort Benning, GA

Seller's Initials

10



**EXHIBIT 1**
**A.C.W. INCORPORATED**
**SUBCONTRACT DETAILED SCOPE OF WORK**

**A.**     Subcontractor agrees to make the Project complete in every respect insofar as this Subcontract is concerned in accordance with the Contract Documents, Plans, and Specifications.

Subcontractor understands that the Contract Documents and Specifications are 100% complete in all instances and agrees that all Work shall provide a complete and functional building, to include all exterior improvements, in accordance with the design intent of the Contract Documents and Specifications for the Scope of Work of this Subcontract and is included in the Subcontract Price.

The Subcontractor shall not perform any portion of the work at any time without Contract Documents or, where required, approved Shop Drawings, Product Data, Manufacturer's Instructions or Samples for such portion of the Work.

**B.**     This Subcontractor will furnish all materials, labor, equipment, insurances, and incidentals necessary to complete the **Gypsum Board Assemblies, Acoustical Ceiling Systems, and Insulation requirements outlined in Division 01 and 09, per RFP No. W912HN-19-R-3003, Plans and Specifications - entitled "Repair Building 399, Sections A & G, Fort Benning, GA" dated July 2019, all issued by the USACE Savannah District Office.**  See Exhibits 2 -5 for access to drawings, RFP and amendments.

Scope of Work includes All specifications and contract documents related to this scope of work, including the below comments and timelines:

|  |  |
|---|---|
| DIVISION 01 | GENERAL REQUIREMENTS |
| DIVISION 09 | FINISHES |

**C.**     **INCLUSIONS:** In addition to the foregoing, it is further understood and agreed that this Subcontract also includes the manufacturing, supply and delivery of the below listed items regardless of whether or not they are in the above specification section(s), or any other specification section, or shown on the plans.  Subcontractor agrees that unless otherwise indicated, the listing of detail or plan references herein, is not intended to limit the Scope of Work required (Subcontractor is responsible for all work as described, shown, or specified).

1.     ASHFORD LEEBCOR ENTERPRISES, LLC is committed to the idea of achieving "Zero Harm" across all of its projects, which means aiming for zero deaths, zero injuries to the public and zero ruined lives among those working on its projects.  Accordingly, Subcontractor agrees to comply with and incorporate the principles of "Zero Harm" into its own safety policies and practices while performing the Work of this Subcontract.

Detailed Scope of Work
Contract #W91278-16-D-0033                    Repair Bldg 399, Sections A & G
2019-001-008 – A.C.W. INCORPORATED          Fort Benning, GA                    Seller's Initials

11



2.    All handling, unloading, rigging, hoisting, scaffolding, permits as required for completion of this Subcontract scope of work.

3.    Subcontractor's full time on-site supervisor directly employed by Subcontractor is required to attend all weekly progress meetings.  Subcontractor Project Manager is required to attend all weekly progress meetings as requested by ASHFORD LEEBCOR ENTERPRISES, LLC. (If you are working on site during any scheduled safety or progress meetings make plans to attend).

4.    Cleanup and removal, on a daily basis, of debris generated by this Subcontractor's work and employees to a dumpster provided by the Contractor. Work areas are to be maintained and left in a broom clean condition at the end of each work day. Failure to Clean will cause for stoppage of work and all costs to clean and make up time will be at Subcontractors expense. Subcontractor is to break down all boxes and crates.

5.    Subcontractor shall agree to fully participate in the ASHFORD LEEBCOR ENTERPRISES, LLC Quality Control Plan and all the daily requirements for reporting of work performed, crew sizes, hours expended. Subcontractor shall designate a responsible Quality Control Representative who has the authority to act for the company in regard to quality issues, testing, inspection, and report to the ASHFORD LEEBCOR ENTERPRISES, LLC Quality Control Manager on a daily basis the measures required by Quality Control Specification. The Subcontractor agrees to provide access to his work for purposes of inspection. ASHFORD LEEBCOR ENTERPRISES, LLC has emphasized that any variation whatsoever from the Contract Documents for the submittal being made to the A/E shall be clearly indicated and flagged.

6.    The Subcontractor agrees to adhere to the ASHFORD LEEBCOR ENTERPRISES, LLC published schedule, and shall provide adequate input to the creation of the schedule for purposes of sequencing the work, requisitioning for payment, schedule of values, resource management, referencing specification sections and construction activities, and full compliance with the scheduling requirements specified.

7.    This subcontractor has included all state and local sales tax requirements in this contract cost.

8.    Subcontractor shall provide all Submittals as required by the Government Specifications, to include but not limited to Work Plans, LEED Documentation, Product Data, Test Reports, Certificates, Samples, Shop Drawings, Operation and Maintenance Data, Closeout Submittals and Manufacturer's Instructions

9.    All materials provided by Subcontractor shall adhere to the Quality Assurance requirements of the Government Specifications.

10.    Subcontractor shall provide all WARRANTIES required by the Government Specifications applicable to this Scope of Work, as well as a MINIMUM ONE (1) year labor, materials, and parts warranty from the government final completion date.

Detailed Scope of Work
Contract #W91278-16-D-0033          Repair Bldg 399, Sections A & G
2019-001-008 – A.C.W. INCORPORATED          Fort Benning, GA          Seller's Initials

12



11.     This subcontractor responsibility to comply with all standards associated final acceptance testing.

12.     Installation of all Work shall adhere to the Environmental Requirements as detailed in the Government Specifications.

13.     This subcontractor will be responsible for obtaining all local and state permits and inspection fees related to their scope of work.

14.     This Subcontractor will furnish all material, labor, equipment, insurances, documentation and incidentals necessary to meet LEED **SILVER** equivalency for their scope of work.

15.     Subcontractor will adhere to all Federal Labor Laws and the Davis Wage Scale requirements.

16.     Construction Indoor Air Quality (IAQ) Management

•Subcontractor shall comply with the following IAQ performance Requirements

•Subcontractor shall prevent exposure of building systems to environmental tobacco smoke during construction by not allowing smoking in enclosed portions of the project site, and not allowing smoking adjacent to fresh air intakes or the building.

•Subcontractor shall provide protection of all ventilation system components during construction.

•Subcontractor shall provide instruction to workers on appropriate procedures and methods for managing and maintaining indoor air quality at the appropriate stages of the project.

17.     Any second tier subcontractors hired under this contract must adhere to all Federal, State, Local regulations, as well as all contract terms set forth in this agreement between ASHFORD LEEBCOR ENTERPRISES, LLC and "Seller". This is to include the submission of the required insurance certificates, bonds (if applicable), SF1413 Form and certified payroll reports.

18.     Any Subcontractor with non-English speaking employees must provide a full-time translator on-site at all times.

D.      **TIMELINES:**  All work of this Subcontract to be performed according the durations listed below and in coordination with the Published Project Schedule.  Subcontractor shall begin work on components of this Scope of Work to advance the Project Schedule as released by the Project Superintendent, as work areas are reasonably available to begin Scope of Work.

Detailed Scope of Work
Contract #W91278-16-D-0033            Repair Bldg 399, Sections A & G
2019-001-008 – A.C.W. INCORPORATED        Fort Benning, GA            Seller's Initials

13



| | |
|---|---|
| **Mobilize** | 2 Days |
| **Submittals** | 1 Week |

**Agreement Notes:**

1. Scheduling: Contractor shall adhere to the timeframes agreed to here-in on attached Scope breakdown. A Government submitted, and approved Baseline Contract Schedule is required for this contract. This Schedule will be submitted to our Subcontractor partners for review and confirmation of compliance. This Schedule will be adjusted bi-weekly and distributed to subs for progress tracking. The start dates for each task are not firm and will be fluid due to early starts or late finishes of prior tasks. This schedule displays the critical path tasking and sequence of operations along with major task durations.

The scheduled tasks are not designed to be run in linear fashion and should start at the direction of the field superintendent. One task may start before the preceding one ends.

E.    **SCOPE OF WORK INCLUDES:**

1. **All "Agreement Notes" referenced on the Proposal and Acceptance notification issued on 08/19/19 and revised on 12/02/2019, attached to and made part of this Subcontract Agreement.**

F.    **EXCLUSIONS / CLARIFICATIONS:**

Detailed Scope of Work
Contract #W91278-16-D-0033          Repair Bldg 399, Sections A & G
2019-001-008 – A.C.W. INCORPORATED          Fort Benning, GA          Seller's Initials

14

| TRADE: | **GWB / ACT** |
|---|---|
| Project: | Building 399 Repair of Olson Hall Sections A & G |
| Location: | Fort Benning, GA |
| Return Date | October 18, 2019 |

| | GENERAL SCOPE ITEMS: | Y/N | Comments: |
|---|---|---|---|
| | Plans entitled "Design Repair of Olson Hall Building 399" dated 5/20/2019 | ✓ | |
| | Specs entitled "Repair Building 399 Sections A & G" dated July 2019 | ✓ | |
| | soliciation number W912HN-19-R-3006 | ✓ | |
| | Amendments 1-5 | ✓ | |
| | Davis Bacon Wage Scale - GA20190118 06/28/2019 | ✓ | |
| | EM385 - Safety Manual - 2018 | ✓ | |
| | Bid Valid for 90 Days | ✓ | |
| | What is your Bond Rate? | 1.5% | |
| | Is your bond included | N | |
| | Time for completion 540 days | ✓ | |
| | Sales Tax included - 8% | ✓ | |
| | Acknowledge LD's are $1,453.00 per day | ✓ | |
| | Submittals Required | ✓ | |
| | All Certifications Required | ✓ | |
| | Hoisting, Handling and Installation | ✓ | |
| | EMR Rating | .83 | |
| | Dart Rate | 0 | |
| | Business Category (Small, Large, SDVOSB, WOSB, 8A, etc.) | — | SMbll |
| | Submittals, Shop Drawings, Mock-Ups, etc. | ✓ | |
| **All Inclusive** | SPECIFIC SCOPE OF WORK: | Y/N | Comments: |
| | Provide fall protection as necessary for demolition and new work activities. | | OUR WORK |
| | Contractor is responsible for all engineering and design. | N | |
| | Contractor is responsible for preparing all required submitalls, shop drawings, etc. as required. | ✓ | |
| | Acknowledge all required PPE shall be worn on site daily. | ✓ | |
| | Contractor is responsible for daily clean-up of work area and removal of debris/trash to provided dumpster. | ✓ | |
| | Field verify/measurements of new work features, locations, etc. | ✓ | |
| | Attend coordination meetings as required by Leebcor PM/Super. | ✓ | |
| | Contractor is responsible for all rental equipment (lifts, cranes, etc.). | | OUR WORK |
| | Contractor is responsible for storage of equipment and supplies. | | OUR WORK |
| | Contractor is responsible for preparing close-out documents such as as-builts, O&Ms, spare parts etc. | | OUR WORK |
| | Coordinating / Scheduling with all subcontractors. | ✓ | |
| | Coordinating / Scheduling with Leebcor Services for protection of existing construction to remain. | ✓ | |
| | What is your Remobilization Charge. | N | |
| | Section 095100 Acoustical Ceilings | N | |
| | Section 092900 Gypsum Board | ✓ | |
| | Drawings: dated, May 20, 2019 Guardian Angel Facility area's ( A & G ) / A-111, A-121, A-122, A-131, A-132, A-141, A-201, A-202, A-203, A-301, A-302, A-303, A-400, A-401, A-402, A-403, A-404, A-405, A-406, A-407, A-408, A-409, A-410, A-411, A-412, A-413, A-414, A-415, A-501, A-600 - A-611, IN-101, IN-102, IN-103, IN-601, IN-602, IN-603, IN-604 | ? | |
| **Gypsum** | Framing - 6" w/5/8" GWB Perimeter Walls | ✓ | |
| | Framing - Stairwell Areas (attic) | ✓ | |
| | Framing - Interior Walls | ✓ | |
| | Framing & sheathing for metal wall panels | N | |
| | Hat Channel where required | ✓ | |
| | Exterior GYP Sheathing | N | |
| | Type X Gypboard | ✓ | |

| | | | |
|---|---|---|---|
| | level I finish @plenum area | ✓ | |
| | level II finish @water resistant backer board | ✓ | |
| | level III finish@walls & ceilings heavy grade wall covering | ✓ | |
| | level IV Finish wall & ceilings | ✓ | |
| | Level 5 finish U.N.O | | WALLS ONLY 1st, 2nd, 3rd |
| | 5/8" Water Resistant GWB Ceiling @ Latrines, Showers, and Laundry | ✓ | |
| | High Impact Gypboard 5/8" corridor walls | ✓ | |
| | (2) layers type X 1/2" GWB @roof assembly (attic) wood framing | ✓ | |
| | Partition Control Joints | ✓ | |
| | Frame out for Windows / doors/louvers 6" w/ batt insulation | ✓ | |
| | interior partitions as noted on sheet A303 / fire ratings / sound ratings (10) different types of applications | ✓ | WBW #10 PER SECTION A301, A302 |
| | 3.5" sound attenuation insulation batts | ✓ | |
| | high density R21 batt insulation | ✓ | |
| | 2" poly ISO insulation exterior walls | ✓ | |
| | unfaced high density R21 insulation between studs | ✓ | AT PARTITION 10 |
| | high density fiberglas insulation between roof rafters R44 (attic) | ✓ | |
| | Interior Wall Insulation per Plans/specs | ✓ | |
| | Non - rated GWB walls 4" above ceiling | ✓ | |
| | Install exterior door frames | ✓ | IN FRAMED WALLS |
| | Install  interior door Frames | ✓ | |
| | Sound caulk on walls as per plans | ✓ | |
| | Plywood  walls for Communications Rooms | N | |
| | Partition Control Joints | ✓ | |
| | Interior Smoke Wall | ✓ | |
| | Smoke Wall Stenciling | ✓ | |
| | Furnish and provide Expansion joint materials | N | |
| | seal openings like around pipes and fixtures | N | |
| | fire resistant assembly materials as required | ✓ | ON OUR WALLS (NO PENETRATIONS) |
| | adhesives, drywall mud, fasteners, joint tape and finish materials | ✓ | |
| | material delivery, handling and loading of floors & attic | ✓ | |
| Closeout | Close out paperwork | ✓ | |
| | Trash to GC provided dumpster | ✓ | |
| | Provide onsite ongoing As-Builts | ✓ | |
| | Storing of your equipment and supplies | ✓ | |
| | Attend onsite coordination meetings | ✓ | |
| | Warranties | | 1 YR |
| | TIMEFRAMES: | | Comments: |
| | what is the longest lead time item or items | Day/Weeks | |
| | time frame for mobilization | Day/Weeks | |
| | work plan | Day/Weeks | |
| | submittals | Day/Weeks | |
| | framing for IMP wall panels ( A & G ) | Day/Weeks | |
| | New materials and equipment | Day/Weeks | |
| | Install framing 1st Floor ( A & G ) each | Day/Weeks | |
| | Install framing 2nd Floor  ( A & G ) each | Day/Weeks | |
| | Install framing 3rd Floor  ( A & G ) each | Day/Weeks | |
| | Install framing Attic  ( A & G ) each | Day/Weeks | |
| | Install gypboard 1st Floor walls  ( A & G ) each | Day/Weeks | |
| | Install gypboard 2nd Floor walls  ( A & G ) each | Day/Weeks | |
| | Install gypboard 3rd Floor walls  ( A & G ) each | Day/Weeks | |
| | Install gypboard 3rd attic walls  ( A & G ) each | Day/Weeks | |
| | Install gypboard 1st Floor ceilings  ( A & G ) each | Day/Weeks | |
| | Install gypboard 2nd Floor ceilings  ( A & G ) each | Day/Weeks | |
| | Install gypboard 3rd Floor ceilings  ( A & G ) each | Day/Weeks | |

| | | | |
|---|---|---|---|
| | Install gypboard 3rd attic ceilings  ( A & G )  each | Day/Weeks | |
| | ~~Install exterior soffit / fascia framing  ( A & G )  each~~ | Day/Weeks | |
| | Install exterior door frames  ( A & G )  each | Day/Weeks | |
| | Install interior door frames  ( A & G )  each | Day/Weeks | |
| | Installation  Insulation 1st floor  ( A & G )  each | Day/Weeks | |
| | Installation Insulation 2nd floor  ( A & G )  each | Day/Weeks | |
| | Installation Insulation 3rd floor  ( A & G )  each | Day/Weeks | |
| | Installation insulation attic  ( A & G )  each | Day/Weeks | |
| | Finish drywall 1st Floor  ( A & G )  each | Day/Weeks | |
| | Finish drywall 2nd Floor  ( A & G )  each | Day/Weeks | |
| | Finish drywall 3rd Floor  ( A & G )  each | Day/Weeks | |
| | Finish drywall attic  ( A & G )  each | Day/Weeks | |
| | Install caulking / sealants  ( A & G )  each | Day/Weeks | |
| | Total Project Time  A & G )  each | Day/Weeks | |
| | Timeframe for demobilization | Day/Weeks | |
| | Total manpower count | Day/Weeks | |
| | Timeframe for close out documentation | Day/Weeks | |
| | *BEST AND FINAL PRICING* | | |
| | **Total Adjusted Bid:** | | |



# EXHIBIT 2 Specifications

https://www.dropbox.com/sh/fcqgj7l5e6wu7y5/AAB9rULI4UpBQum1NWLU_y67a?dl=0

# EXHIBIT 3 Drawings

https://www.dropbox.com/sh/84fvm71s914ai7p/AAAHpzuPXz2iiSiYQ-J9lT6Ua?dl=0

# EXHIBIT 4 Amendments

https://www.dropbox.com/sh/b5wauitkimnz4hc/AACKdeft4X11-A2yjIVPF_q6a?dl=0

# EXHIBIT 5 Flow Down Provisions

https://www.dropbox.com/sh/jkhaurf6248d42w/AAB2q1fluTN0Ru-z5W3n9qnra?dl=0

I have read and acknowledged the above listed links and information provided in Exhibits 2-12.

| Company: |
| --- |
| Signature: |
| Printed Name: |
| Title: |
| Date: |



# EXHIBITS 6-12

## Exhibit 6                                  Performance/Payment  Bonds

Any contract requiring a bond must be submitted on these forms.    Original Signatures are required. Please mail Bonds to our main office when returning your executed contract.

## Exhibit 7                              Lien Waivers (Partial & Final)

All invoices submitted must be accompanied by a partial or final lien waiver form.  Payments will not be processed without this information.

## Exhibit 8                SF 1413 Acknowledgment Statement

The purpose of this statement is to identify the specific work to be performed by the subcontractor and to ensure that all parties are in compliance with the applicable labor laws and associated clauses in the contract.  Please complete the subcontractor sections of this form, sign, date and return with your executed contract.

## Exhibit 9                Davis Bacon Wage Scale Determination

The **Davis–Bacon Act** of 1931 is a federal law that establishes the requirement for paying the local prevailing wages on public works projects for laborers and mechanics. It applies to "contractors and subcontractors performing on federally funded or assisted contracts in excess of $2,000.

## Exhibit 10                Certified Payroll Forms and Instructions

This section includes the specific reporting instructions and necessary forms for submitting weekly certified payroll reports. Please review this section thoroughly.

## Exhibit 11                                            Buy American Act

The purpose of the Buy American Act is to provide preferential treatment for domestic sources of construction material used on public works project unless a specific exemption applies.

## Exhibit 12                Certificate of Insurance Sample

A current Certificate of Insurance is required prior to the commencement of any work on site.   Please review specific requirements in this section.



# **EXHIBIT 6**

# Payment and Performance Bonds

Form A

SUBCONTRACTOR SURETY BOND FORMS

## SUBCONTRACTOR PERFORMANCE BOND

Bond No: _____

**KNOW ALL MEN BY THESE PRESENTS:**

That _____
_____ (*Insert name and address of Subcontractor*)
_____ as Principal, hereinafter called
Principal, and _____
_____ (*Insert name and*
*address of Surety*)
as Surety, hereinafter called Surety, are held and firmly bound unto Leebcor Services, LLC, 430
McLaws Circle, Suite 201, Williamsburg, VA 23185 ("Obligee") hereinafter called "Obligee", in the
amount of_____Dollars ($_____)for the payment whereof Principal and Surety bind
themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly
by these presents.

WHEREAS, Principal has, by written agreement dated_____entered into a contract with
Obligee for____at the_____("Project"), located in_____,_____which   contract   is   by
reference made a part hereof, and is hereinafter referred to as the Subcontract.

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION** is such that if Principal shall
promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise,
it shall remain in full force and effect.

Whenever Principal shall be, and declared by Obligee to be in default under the subcontract, the Obligee
having performed Obligee's obligations thereunder:

(1)   Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

(2)   Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange
      for the performance of Principal's obligation under the subcontract subject to the provisions of
      paragraph 3 herein;

(3)   The balance of the subcontract price, as defined below, shall be credited against the reasonable
      cost of completing performance of the subcontract.  If completed by the Obligee, and the
      reasonable cost exceeds the balance of the subcontract price, the Surety shall pay the Obligee
      such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this
      bond.  If the Surety arranges completion or remedies the default, that portion of the balance of the
      subcontract price as may be required to complete the subcontract or remedy the default and
      reimburse the Surety for its outlays shall be paid to the Surety at the times and the manner as said
      sums would have been payable to Principal had there been no default under the subcontract.  The
      term "balance of the subcontract prices", as used in this paragraph, shall mean the total amount
      payable by Obligee to Principal under the subcontract and any amendments thereto, less the
      amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of two (2) years from the date on

2/1/2013

Form A

which final payment under the Subcontract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators or the successors of the Obligee.

Signed and sealed this_____day of_____, 20_.

_____     [Seal]
*(Subcontractor)*

_____     _____
*(Witness/Attest)*                   *(Title)*

_____     [Seal]
*(Surety)*

_____     _____
*(Witness/Attest)*                   *(Title)*

[Attach Surety Company Power of Attorney]

Form A

# SUBCONTRACTOR LABOR AND MATERIAL PAYMENT BOND

Bond No: _____

**KNOW ALL MEN BY THESE PRESENTS:**

That _____
(*Insert name and address of Subcontractor*)
_____ as Principal, hereinafter called
Principal, and _____
(*Insert name and
address of Surety*)
as Surety, hereinafter called Surety, are held and firmly bound unto <u>Leebcor Services, LLC, 430</u>
<u>McLaws Circle, Suite 201, Williamsburg, VA 23185</u>("Obligee") as Obligee, in the amount of
_____ Dollars ($_____) for the payment whereof Principal and Surety bind
themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly
by these presents.

WHEREAS, Principal has, by written agreement dated_____entered into a subcontract with
Obligee for_____at the_____("Project"), located in_____,_____in
accordance with drawings and specifications prepared by_____which subcontract is by reference
made a part hereof, and is hereinafter referred to as the Subcontract.

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION** is such that if the Principal
shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or
reasonably required for use in the performance of the subcontract, then this obligation shall be void;
otherwise, it shall remain in full force and effect, subject however, to the following conditions:

(1)   A Claimant is defined as one having a direct contract with the Principal for labor, material or
      both, used or reasonably required for use in the performance of the subcontract; labor and
      material being construed to include that part of water, gas, power, light, heat, oil, gasoline,
      telephone service or rental of equipment directly applicable to the Contract.

(2)   The above named Principle and Surety hereby jointly and severally agree with the Obligee that
      every Claimant as herein defined, who has not been paid in full before the expiration of a period
      of ninety (90) days after the date on which the last of such claimant's work or labor was done or
      performed, or materials were furnished by such claimant, may sue on this bond for the use of
      such claimant, prosecute the suit to final judgement for such sum or sums as may be justly due
      claimant, and have execution thereon.  The Obligee shall not be liable for the payment of any
      costs or expenses of any such suit.

(3)   No suit or action shall be commenced hereunder by any Claimant,

      (a)   After the expiration of one (1) year following the date on which Principal ceased work on
            said subcontract, being understood, however, that if any limitation embodied in this bond
            is prohibited by any law controlling the construction hereof, such limitation shall be

2/1/2013

Form A

deemed to be amended so as to be equal to the minimum period of limitation permitted by law.

(b)     Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

(4)    The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

The Subcontractor and Surety hereunder shall not be liable to any one or to all of the Obligees in the aggregate in excess of the penal sum stated above.

Signed and sealed this_____day of_____, 20_____.


_____          _____
                                                                  *(Subcontractor)*                                [Seal]

_____          _____
          *(Witness/Attest)*                                     *(Title)*


_____          _____
                                                                  *(Surety)*                                       [Seal]

_____          _____
          *(Witness/Attest)*                                     *(Title)*


[Attach Surety Company Power of Attorney]



# EXHIBIT 7

## Lien Waivers



**CONDITIONAL WAIVER AND RELEASE OF LIEN FOR
PARTIAL PAYMENT**


The undersigned lienor, _____, (Subcontractor) in consideration of PARTIAL PAYMENT of the _____, (Invoice) submitted to Ashford Leebcor Enterprises, LLC on _____, (Date To Be Completed By Ashford Leebcor Enterprises) in the amount of _____, (Amount) dated _____, (Invoice Date) and approved by Ashford Leebcor Enterprises LLC on _____, (Date To Be Completed By Ashford Leebcor Enterprises) and to be paid by Ashford Leebcor Enterprises, LLC in said amount, waives and releases its lien and right to claim a lien for labor, services or materials furnished through _____, (Application Period Ending Date) to Ashford Leebcor Enterprises, LLC for the project known as **Contract No. W91278-16-D-0033, Task Order No. W912HN-19-C-3011, Repair Building 399, Sections A & G, Fort Benning, GA** as per _____, (Subcontractor) Project: _____ (Project Name).



Date: _____

Lienor's Name: _____



Signed By: _____

Printed Name: _____

Title: _____

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎


The foregoing instrument was acknowledged before me this _____ day of _____, 20____

by _____ who is personally known to me or produced

_____ as identification.

NOTARY PUBLIC: _____

My commission expires: _____



## CONDITIONAL WAIVER AND RELEASE OF LIEN FOR
## FINAL PAYMENT

The undersigned lienor, _____, (Subcontractor) in consideration of FINAL PAYMENT of the _____, (Invoice) submitted to Ashford Leebcor Enterprises, LLC on _____, (Date To Be Completed By Ashford Leebcor Enterprises) in the amount of _____, (Amount) dated _____, (Invoice Date) and approved by Ashford Leebcor Enterprises, LLC on _____, (Date To Be Completed By Ashford Leebcor Enterprises) and to be paid by Ashford Leebcor Enterprises, LLC in said amount, waives and releases its lien and right to claim a lien for labor, services or materials furnished through _____, (Application Period Ending Date) to Ashford Leebcor Enterprises, LLC for the project known as **Contract No. W91278-16-D-0033, Task Order No. W912HN-19-C-3011, Repair Building 399, Sections A & G, Fort Benning, GA** as per_____, (Subcontractor) Project: _____(Project Name).

Date: _____

Lienor's Name: _____

Signed By: _____

Printed Name: _____

Title:_____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The foregoing instrument was acknowledged before me this _____ day of _____, 20___

by _____ who is personally known to me or produced

_____ as identification.

NOTARY PUBLIC: _____

My commission expires: _____



# **EXHIBIT 8**

Form SF 1413

Statement & Acknowledgement Form

## STATEMENT AND ACKNOWLEDGMENT

**OMB Control Number: 9000-0014**
**Expiration Date: 1/31/2021**

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0014. We estimate that it will take .05 hours to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: U.S. General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

### PART I - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NUMBER | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER |
|---|---|---|

| 4. PRIME CONTRACTOR | | 5. SUBCONTRACTOR | |
|---|---|---|---|
| a. NAME | | a. NAME | |
| b. STREET ADDRESS | | b. STREET ADDRESS | |
| c. CITY | d. STATE / e. ZIP CODE | c. CITY | d. STATE / e. ZIP CODE |

6. The prime contract ☐ does, ☐ does not contain the clause entitled "Contract Work Hours and Safety Standards Act -- Overtime Compensation."

7. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on the date shown in Item 2 to the subcontractor identified in item 5 by the following firm:

a. NAME OF AWARDING FIRM

b. DESCRIPTION OF WORK BY SUBCONTRACTOR

| 8. PROJECT | 9. LOCATION |
|---|---|

| 10a. NAME OF PERSON SIGNING | 11. BY *(Signature)* | 12. DATE SIGNED |
|---|---|---|
| 10b. TITLE OF PERSON SIGNING | | |

### PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

13. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

Contract Work Hours and Safety Standards Act - Overtime Compensation
  (If included in prime contract see Block 6)
Payrolls and Basic Records
Withholding of Funds
Disputes Concerning Labor Standards
Compliance with Construction Wage Rate Requirements
  and Related Regulations

Construction Wage Rate Requirements
Apprentices and Trainees
Compliance with Copeland Act Requirements
Subcontracts (Labor Standards)
Contract Termination - Debarment
Certification of Eligibility

14. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| A | C |
|---|---|
| B | D |

| 15a. NAME OF PERSON SIGNING | 16. BY *(Signature)* | 17. DATE SIGNED |
|---|---|---|
| 15b. TITLE OF PERSON SIGNING | | |



# **EXHIBIT 9**

Davis Bacon Wage Scale Determination

"General Decision Number: GA20190118 06/28/2019

Superseded General Decision Number: GA20180130

State: Georgia

Construction Type: Building

County: Chattahoochee County in Georgia.

Note: Under Executive Order (EO) 13658, an hourly minimum wage
of $10.60 for calendar year 2019 applies to all contracts
subject to the Davis-Bacon Act for which the contract is
awarded (and any solicitation was issued) on or after January
1, 2015.  If this contract is covered by the EO, the contractor
must pay all workers in any classification listed on this wage
determination at least $10.60 per hour (or the applicable wage
rate listed on this wage determination, if it is higher) for
all hours spent performing on the contract in calendar year
2019.  If this contract is covered by the EO and a
classification considered necessary for performance of work on
the contract does not appear on this wage determination, the
contractor must pay workers in that classification at least the
wage rate determined through the conformance process set forth
in 29 CFR 5.5(a)(1)(ii) (or the EO minimum wage rate,if it is
higher than the conformed wage rate).  The EO minimum wage rate
will be adjusted annually.  Please note that this EO applies to
the above-mentioned types of contracts entered into by the
federal government that are subject to the Davis-Bacon Act
itself, but it does not apply to contracts subject only to the
Davis-Bacon Related Acts, including those set forth at 29 CFR
5.1(a)(2)-(60). Additional information on contractor
requirements and worker protections under the EO is available
at www.dol.gov/whd/govcontracts.

| Modification Number | Publication Date |
|---------------------|------------------|
| 0                   | 01/04/2019       |
| 1                   | 04/12/2019       |
| 2                   | 06/28/2019       |

* ASBE0048-001 04/01/2019

```
                          Rates        Fringes


ASBESTOS WORKER/HEAT & FROST

INSULATOR........................$ 28.12        16.26
----------------------------------------------------------------
 BOIL0026-001 03/01/2018


                          Rates        Fringes


BOILERMAKER......................$ 28.97        22.39
----------------------------------------------------------------
 ENGI0474-001 07/01/2017


                          Rates        Fringes


POWER EQUIPMENT OPERATOR:
     Bobcat/Skid Steer/Skid
     Loader, Bulldozer, and
     Forklift (under 15 tons)....$ 25.02        13.83
     Crane (over 10 tons) and
     Forklift (15 tons and over).$ 26.85        13.83
     Crane (over 120 tons).......$ 27.85        13.83
     Crane (over 250 tons).......$ 28.85        13.83
     Oiler.......................$ 22.68        13.83
----------------------------------------------------------------
 PAIN1940-001 10/01/2017


                          Rates        Fringes


GLAZIER..........................$ 22.35         9.81


 FOOTNOTE:    Paid holidays: Thanksgiving Day, Christmas Day,
 New Year's Day, National Memorial Day, July 4th and Labor
 Day; if the employee works the day before and the day after
```

the holiday.

```
----------------------------------------------------------------
```

PLUM0052-003 01/01/2019

|                                        | Rates      | Fringes |
|----------------------------------------|------------|---------|
| PIPEFITTER (HVAC Pipe Installation Only)...............$ 28.60 | | 14.51 |

```
----------------------------------------------------------------
```

SUGA2012-037 08/11/2012

|                                        | Rates      | Fringes |
|----------------------------------------|------------|---------|
| BRICKLAYER.......................$ 15.09 | | 1.04 |
| CARPENTER (Drywall Finishing, Drywall Hanging, and Metal Stud Installation)...............$ 14.00 | | 0.36 |
| CARPENTER (Form Work Only).......$ 19.67 | | 0.00 |
| CARPENTER, Excludes Drywall Finishing/Taping, Drywall Hanging, Form Work and Metal Stud Installation................$ 15.70 | | 0.53 |
| CEMENT MASON/CONCRETE FINISHER...$ 18.19 | | 0.00 |
| ELECTRICIAN (Low Voltage Wiring and Installation of Alarms).........................$ 15.54 | | 1.98 |
| ELECTRICIAN, Excludes Low Voltage Wiring and Installation of Alarms..........$ 20.72 | | 3.58 |
| ELEVATOR MECHANIC...............$ 30.00 | | 6.21 |
| IRONWORKER, REINFORCING.........$ 20.47 | | 3.89 |

```
IRONWORKER, STRUCTURAL...........$ 24.04          9.26


LABORER:  Common or General......$ 11.05          0.85


LABORER:  Mason Tender - Brick...$  9.00          0.00


LABORER:  Pipelayer.............$ 11.48           1.90


OPERATOR:  Backhoe/Excavator.....$ 14.29          2.12


OPERATOR:  Grader/Blade.........$ 17.52           0.00


OPERATOR:  Loader...............$  8.00           0.00


PAINTER:  Brush, Roller and
Spray...........................$ 12.62           0.95


PIPEFITTER, Excludes HVAC
Pipe Installation...............$ 20.13           0.00


PLUMBER, Excludes HVAC Pipe
Installation....................$ 19.88           5.39


ROOFER..........................$ 14.48           0.00


SHEET METAL WORKER (HVAC Duct
and HVAC Unit Installation
Only)...........................$ 22.67           7.18


SHEET METAL WORKER, Excludes
HVAC Duct and Unit
Installation....................$ 18.03           0.00


SPRINKLER FITTER (Fire
Sprinklers).....................$ 20.77           3.51


TILE FINISHER...................$ 10.31           0.00


TILE SETTER.....................$ 20.00           0.00


TRUCK DRIVER:  Dump Truck.......$ 10.00           1.33
```

```
TRUCK DRIVER:  Lowboy Truck......$ 17.41          0.00
```
----------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing
operation to which welding is incidental.

================================================================

Note: Executive Order (EO) 13706, Establishing Paid Sick Leave
for Federal Contractors applies to all contracts subject to the
Davis-Bacon Act for which the contract is awarded (and any
solicitation was issued) on or after January 1, 2017.  If this
contract is covered by the EO, the contractor must provide
employees with 1 hour of paid sick leave for every 30 hours
they work, up to 56 hours of paid sick leave each year.
Employees must be permitted to use paid sick leave for their
own illness, injury or other health-related needs, including
preventive care; to assist a family member (or person who is
like family to the employee) who is ill, injured, or has other
health-related needs, including preventive care; or for reasons
resulting from, or to assist a family member (or person who is
like family to the employee) who is a victim of, domestic
violence, sexual assault, or stalking.  Additional information
on contractor requirements and worker protections under the EO
is available at www.dol.gov/whd/govcontracts.

Unlisted classifications needed for work not included within
the scope of the classifications listed may be added after
award only as provided in the labor standards contract clauses
(29CFR 5.5 (a) (1) (ii)).

----------------------------------------------------------------

The body of each wage determination lists the classification
and wage rates that have been found to be prevailing for the
cited type(s) of construction in the area covered by the wage
determination. The classifications are listed in alphabetical
order of ""identifiers"" that indicate whether the particular

rate is a union rate (current union negotiated rate for local),
a survey rate (weighted average rate) or a union average rate
(weighted union average rate).

Union Rate Identifiers

A four letter classification abbreviation identifier enclosed
in dotted lines beginning with characters other than ""SU"" or
""UAVG"" denotes that the union classification and rate were
prevailing for that classification in the survey. Example:
PLUM0198-005 07/01/2014. PLUM is an abbreviation identifier of
the union which prevailed in the survey for this
classification, which in this example would be Plumbers. 0198
indicates the local union number or district council number
where applicable, i.e., Plumbers Local 0198. The next number,
005 in the example, is an internal number used in processing
the wage determination. 07/01/2014 is the effective date of the
most current negotiated rate, which in this example is July 1,
2014.

Union prevailing wage rates are updated to reflect all rate
changes in the collective bargaining agreement (CBA) governing
this classification and rate.

Survey Rate Identifiers

Classifications listed under the ""SU"" identifier indicate that
no one rate prevailed for this classification in the survey and
the published rate is derived by computing a weighted average
rate based on all the rates reported in the survey for that
classification.  As this weighted average rate includes all
rates reported in the survey, it may include both union and
non-union rates. Example: SULA2012-007 5/13/2014. SU indicates
the rates are survey rates based on a weighted average
calculation of rates and are not majority rates. LA indicates
the State of Louisiana. 2012 is the year of survey on which
these classifications and rates are based. The next number, 007
in the example, is an internal number used in producing the
wage determination. 5/13/2014 indicates the survey completion
date for the classifications and rates under that identifier.

Survey wage rates are not updated and remain in effect until a
new survey is conducted.


Union Average Rate Identifiers


Classification(s) listed under the UAVG identifier indicate
that no single majority rate prevailed for those
classifications; however, 100% of the data reported for the
classifications was union data. EXAMPLE: UAVG-OH-0010
08/29/2014. UAVG indicates that the rate is a weighted union
average rate. OH indicates the state. The next number, 0010 in
the example, is an internal number used in producing the wage
determination. 08/29/2014 indicates the survey completion date
for the classifications and rates under that identifier.


A UAVG rate will be updated once a year, usually in January of
each year, to reflect a weighted average of the current
negotiated/CBA rate of the union locals from which the rate is
based.



----------------------------------------------------------------

                    WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can
be:

*  an existing published wage determination
*  a survey underlying a wage determination
*  a Wage and Hour Division letter setting forth a position on
   a wage determination matter
*  a conformance (additional classification and rate) ruling


On survey related matters, initial contact, including requests
for summaries of surveys, should be with the Wage and Hour
Regional Office for the area in which the survey was conducted
because those Regional Offices have responsibility for the
Davis-Bacon survey program. If the response from this initial
contact is not satisfactory, then the process described in 2.)

and 3.) should be followed.

With regard to any other matter not yet ripe for the formal
process described here, initial contact should be with the
Branch of Construction Wage Determinations.  Write to:

> Branch of Construction Wage Determinations
> Wage and Hour Division
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an
interested party (those affected by the action) can request
review and reconsideration from the Wage and Hour Administrator
(See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

> Wage and Hour Administrator
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

The request should be accompanied by a full statement of the
interested party's position and by any information (wage
payment data, project description, area practice material,
etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an
interested party may appeal directly to the Administrative
Review Board (formerly the Wage Appeals Board).  Write to:

> Administrative Review Board
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

================================================================

                    END OF GENERAL DECISION"



**CERTIFIED PAYROLL INSTRUCTIONS**

For any Federal government projects in excess of $2,000.00, The Copeland Act requires that each week every employer must submit weekly payroll reports called Certified Payroll Reports (CPR's).

Payrolls must be filled out for each week of work by either an authorized company officer or a person appointed by the authorized officer until you are completely finished with the project.

Each payroll week must be numbered consecutively. The first payroll should be marked "FIRST" followed by Payroll 2 then Payroll 3, and so on. The last payroll must be marked "FINAL". **Weeks where no work is performed still require certified payroll with "NO WORK PERFORMED" written across the payroll OR a "NO WORK REPORT" until your contract is fulfilled.**

**Certified Payroll must be emailed weekly to the Project Coordinator, <u>beth.goller@leebcor.com</u> and MUST include the completed payroll transmittal for EACH weekly report. Faxing is not accepted.** As a general rule, payrolls should be submitted to the Prime Contractor on **Wednesdays** for the previous work   week. Payrolls  must  be signed by a company officer or appointee to be valid. **Only original signatures are accepted. <u>When emailing payroll reports please use the following file name format</u>:**

> ❖ File name should read as, "Company Name" CP# - WE 03.15.19
>   Ex: Leebcor Services CP 1 – WE 03.15.19

<u>**Payment of employees, by law must be at least the prevailing wage rate plus any fringe benefits listed on the wage determination for each trade classification**</u>. A copy of the wage determination is included in this welcome packet and can be obtained from the RFP Documents. If your work classification does not appear on the wage determination, please contact the Prime Contractor to request a **Form 1444 – Request for Additional Classification Form.**

## Additional Information: Department of Labor Instructions for WH-347 Form

**General: Form WH-347** has been made available for the convenience of contractors and subcontractors  required by their Federal or Federally-aided construction-type contracts and subcontracts to submit weekly  payrolls. Properly filled out, this form will satisfy the requirements of Regulations, Parts 3 and 5 (29 C.F.R.,  Subtitle A), as to payrolls submitted in connection with contracts subject to the Davis-Bacon and related Acts.

While completion of Form WH-347 is optional, it is mandatory for covered contractors and subcontractors performing work on Federally financed or assisted construction contracts to respond to the information collection contained in 29 C.F.R. §§ 3.3, 5.5(a). The Copeland Act (40 U.S.C. § 3145) requires contractors and subcontractors performing work on Federally financed or assisted construction contracts to "furnish weekly a statement with respect to the wages paid each employee during the preceding week." U.S. Department of Labor (DOL) Regulations at 29 C.F.R. § 5.5(a) (3) (ii) require contractors to submit weekly a copy of all payrolls to the Federal agency contracting for or financing the construction project, accompanied by a signed "Statement of Compliance" indicating that the payrolls are correct and complete and that each laborer or mechanic has been paid not less than the proper Davis-Bacon prevailing wage rate for the work performed. DOL and federal contracting agencies receiving this information review the information to determine that  employees have received legally required wages and fringe benefits.



Under the Davis-Bacon and related Acts, the contractor is required to pay not less than prevailing wage, including fringe benefits, as predetermined by the Department of Labor. The contractor's obligation to pay fringe benefits may be met either by payment of the fringe benefits to bona fide benefit plans, funds or programs or by making payments to the covered workers (laborers and mechanics) as cash in lieu of fringe benefits.

This payroll provides for the contractor to show on the face of the payroll all monies to each worker, whether as basic rates or as cash in lieu of fringe benefits, and provides for the contractor's representation in the statement of compliance on the payroll (as shown on page 2) that he/she is paying for fringe benefits required by the contract and not paid as cash in lieu of fringe benefits.

**INSTRUCTIONS CONCERNING THE PREPARATION OF THE CERTIFIED PAYROLL REPORT IS LISTED BELOW:**

**Contractor or Subcontractor:** Fill in your firm's name and check appropriate box.

**Address:** Fill in your firm's address.

**Payroll No.:** Beginning with the number "1", list the payroll number for the submission.

**For Week Ending:** List the workweek ending date.

**Project and Location:** Self-explanatory.

**Project or Contract No.:** Self-explanatory.

**Column 1 - Name and Individual Identifying Number of Worker:** Enter each worker's full name and an individual identifying number (e.g., last four digits of worker's social security number) on each weekly payroll submitted.

**Column 2 - No. of Withholding Exemptions:** This column is merely inserted for the employer's convenience and is not a requirement of Regulations, Part 3 and 5.

**Column 3 - Work Classifications:** List classification descriptive of work actually performed by each laborer or mechanic. Consult classification and minimum wage schedule set forth in contract specifications. If additional classifications are deemed necessary, see Contracting Officer or Agency representative. An individual may be shown as having worked in more than one classification provided an accurate breakdown or hours worked in each classification is maintained and shown on the submitted payroll by use of separate entries.

**Column 4 - Hours worked:** List the day and date and straight time and overtime hours worked in the applicable boxes. On all contracts subject to the Contract Work Hours Standard Act, enter hours worked in excess of 40 hours a week as "overtime".

**Column 5 - Total:** Self-explanatory



**Column 6 - Rate of Pay (Including Fringe Benefits):** In the "straight time" box for each worker, list the actual hourly rate paid for straight time worked, plus cash paid in lieu of fringe benefits paid. When recording the straight time hourly rate, any cash paid in lieu of fringe benefits may be shown separately from the basic rate. For example, "$12.25/.40" would reflect a $12.25 base hourly rate plus $0.40 for fringe benefits. This is of assistance in correctly computing overtime. See "Fringe Benefits" below. When overtime is worked, show the overtime hourly rate paid plus any cash in lieu of fringe benefits paid in the "overtime" box for each worker; otherwise, you may skip this box. See "Fringe Benefits" below. Payment of not less than time and one-half the basic or regular rate paid is required for overtime under the Contract Work Hours Standard Act of 1962 if the prime contract exceeds $100,000. In addition to paying no less than the predetermined rate for the classification which an individual works, the contractor must pay amounts predetermined as fringe benefits in the wage decision made part of the contract to approved fringe benefit plans, funds or programs or shall pay as cash in lieu of fringe benefits. See "FRINGE BENEFITS" below.

**Column 7 - Gross Amount Earned:** Enter gross amount earned on this project. If part of a worker's weekly wage was earned on projects other than the project described on this payroll, enter in column 7 first the amount earned on the Federal or Federally assisted project and then the gross amount earned during the week on all projects, thus "$163.00/$420.00" would reflect the earnings of a worker who earned $163.00 on a Federally assisted construction project during a week in which $420.00 was earned on all work.

**Column 8 - Deductions:** Five columns are provided for showing deductions made. If more than five deductions are involved, use the first four columns and show the balance deductions under "Other" column; show actual total under "Total Deductions" column; and in the attachment to the payroll describe the deduction(s) contained in the "Other" column. All deductions must be in accordance with the provisions of the Copeland Act Regulations, 29 C.F.R., Part 3. If an individual worked on other jobs in addition to this project, show actual deductions from his/her weekly gross wage, and indicate that deductions are based on his gross wages.

**Column 9 - Net Wages Paid for Week:** Self-explanatory.

**Totals** - Space has been left at the bottom of the columns so that totals may be shown if the contractor so desires.

**Statement Required by Regulations, Parts 3 and 5:** While the "statement of compliance" need not be notarized, the statement (on page 2 of the payroll form) is subject to the penalties provided by 18 U.S.C. § 1001, namely, a fine, possible imprisonment of not more than 5 years, or both. Accordingly, the party signing this statement should have knowledge of the facts represented as true.

**Items 1and 2:** Space has been provided between items (1) and (2) of the statement for describing any deductions made. If all deductions made are adequately described in the "Deductions" column above, state "*See* Deductions column in this payroll." *See* "FRINGE BENEFITS" below for instructions concerning filling out paragraph 4 of the statement.



**Item 4 FRINGE BENEFITS - Contractors who pay all required fringe benefits:** If paying all fringe benefits to  approved plans, funds, or programs in amounts not less than were determined in the applicable wage decision  of the Secretary of Labor, show the basic cash hourly rate and overtime rate paid to each worker on the face of  the payroll and check paragraph 4(a) of the statement on page 2 of the WH-347 payroll form to indicate the  payment. Note any exceptions in section 4(c).

**Contractors who pay no fringe benefits:** If not paying all fringe benefits to approved plans, funds, or programs in amounts of at least those that were determined in the applicable wage decision of the Secretary of Labor, pay  any remaining fringe benefit amount to each laborer and mechanic and insert in the "straight time" of the "Rate  of Pay" column of the payroll an amount not less than the predetermined rate for each classification plus  the  amount of fringe benefits determined for each classification in the application wage decision. Inasmuch as it is  not necessary to pay time and a half on cash paid in lieu of fringe benefits, the overtime rate shall be not less  than the sum of the basic predetermined rate, plus the half time premium on basic or regular rate, plus the  required cash in lieu of fringe benefits at the straight time rate. In addition, check paragraph 4(b) of the  statement on page 2 the payroll form to indicate the payment of fringe benefits in cash directly to the workers.   Note any exceptions in section 4(c).

**Use of section 4(c), Exceptions**
Any contractor who is making payment to approved plans, funds, or programs in amounts less than the wage determination requires is obliged to pay the deficiency directly to the covered worker as cash in lieu of fringe benefits. Enter any exceptions to section 4(a) or 4(b) in section 4(c). Enter in the Exception column the craft, and enter in the Explanation column the hourly amount paid each worker as cash in lieu of fringe benefits and the  hourly amount paid to plans, funds, or programs as fringe benefits. The contractor must pay an amount not less  than the predetermined rate plus cash in lieu of fringe benefits as shown in section 4(c) to each such individual  for all hours worked (unless otherwise provided by applicable wage determination) on the Federal or Federally  assisted project. Enter the rate paid and amount of cash paid in lieu of fringe benefits per hour in column 6 on  the payroll. See paragraph on "Contractors who pay no fringe benefits" for computation of overtime rate.

**Public Burden Statement:** We estimate that it will take an average of 1 hour to complete this collection of  information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, ESA, U.S. Department of  Labor, Room S3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**INSTRUCTIONS CONCERNING THE PREPARATION OF THE CERTIFIED PAYROLL TRANSMITTAL IS LISTED BELOW:**

1. **Subcontractor Name**: Fill in your firm's name and check the appropriate box. *If you're a 2nd or 3rd tier subcontractor, include the name of the firm you're working under.

2. **Payroll Report Number**: This number should match the report number marked on the corresponding payroll report.

3. **Payroll Report Period**: The first and last day listed on the corresponding payroll report. *This should be a 7-day period.



4. **Number of Employees Working**: Count the number of employees working onsite listed on the corresponding payroll report.

5. **Total "Straight Time" Hours Worked**: Add the TOTAL "straight time" hours worked for each employee working onsite and listed on the corresponding payroll report.

6. **Total "Over Time" Hours Worked**: Add the TOTAL "over time" hours worked for each employee working onsite and listed on the corresponding payroll report.

7. **Total Combined Hours Worked**: This number will **==automatically calculate==** based on the numbers entered for #5) and #6).

**Under Forms Included**: Mark all that apply

**Printed Name**: Name of the person completing and submitting the certified payroll package.

**Signature:** Signature of the person completing and submitting the certified payroll package.

**Date:** The date the certified payroll package was submitted.

**U.S. Department of Labor**
Wage and Hour Division



**PAYROLL**
**(For Contractor's Optional Use; See Instructions at www.dol.gov/whd/forms/wh347instr.htm)**

*Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.*

Rev. Dec. 2008

| NAME OF CONTRACTOR        OR SUBCONTRACTOR | ADDRESS | OMB No.: 1235-0008 Expires: 01/31/2015 |
|---|---|---|

| PAYROLL NO. | FOR WEEK ENDING | PROJECT AND LOCATION | PROJECT OR CONTRACT NO. |
|---|---|---|---|

| (1) NAME AND INDIVIDUAL IDENTIFYING NUMBER (e.g., LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER) OF WORKER | (2) NO. OF WITHHOLDING EXEMPTIONS | (3) WORK CLASSIFICATION | OT OR ST | (4) DAY AND DATE / HOURS WORKED EACH DAY | | | | | | | (5) TOTAL HOURS | (6) RATE OF PAY | (7) GROSS AMOUNT EARNED | (8) DEDUCTIONS | | | | | (9) NET WAGES PAID FOR WEEK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | FICA | WITH-HOLDING TAX | | | OTHER | TOTAL DEDUCTIONS | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |
| | | | O | | | | | | | | | | | | | | | | | |
| | | | S | | | | | | | | | | | | | | | | | |

While completion of Form WH-347 is optional, it is mandatory for covered contractors and subcontractors performing work on Federally financed or assisted construction contracts to respond to the information collection contained in 29 C.F.R. §§ 3.3, 5.5(a). The Copeland Act (40 U.S.C. § 3145) contractors and subcontractors performing work on Federally financed or assisted construction contracts to "furnish weekly a statement with respect to the wages paid each employee during the  preceding week." U.S. Department of Labor (DOL) regulations at 29 C.F.R. § 5.5(a)(3)(ii) require contractors to submit weekly a copy of all payrolls to the Federal agency contracting for or financing the construction project, accompanied by a signed "Statement of Compliance" indicating that the payrolls are correct and complete and that each laborer or mechanic has been paid not less than the proper Davis-Bacon prevailing wage rate for the work performed. DOL and federal contracting agencies receiving this information review the information to determine that employees have received legally required wages and fringe benefits.

**Public Burden Statement**

We estimate that is will take an average of 55 minutes to complete this collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S3502, 200 Constitution Avenue, N.W. Washington, D.C. 20210

(over)

Date _____

I, _____  _____
        (Name of Signatory Party)                       (Title)

do hereby state:

    (1) That I pay or supervise the payment of the persons employed by

_____ on the
                  (Contractor or Subcontractor)

_____ ; that during the payroll period commencing on the
           (Building or Work)

_____ day of _____, _____, and ending the _____ day of _____, _____,

all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said

_____ from the full
                  (Contractor or Subcontractor)

weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 C.F.R. Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Start. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. § 3145), and described below:

_____

_____

_____

_____

    (2) That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.

    (3) That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

    (4) That:
      (a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

        — in addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe bene fits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in section 4(c) below.

(b) WHERE FRINGE BENEFITS ARE PAID IN CASH

        — Each laborer or mechanic listed in the above referenced payroll has been paid, as indicated on the payroll, an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in section 4(c) below.

    (c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| REMARKS: |
|---|
|  |

| NAME AND TITLE | SIGNATURE |
|---|---|

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

# How to Correctly Fill Out a WH-347 Payroll Form

The completion of the WH-347 Payroll Form is optional; contractors may utilize their own payroll system as long as it conforms to the WH-347 Payroll Form and contains all the necessary information. If you utilize WH-347 Payroll Form as a pdf, saving it electronically aids in making any needed corrections.



Check one of the boxes and list name of contractor or subcontractor

The last day of the payroll period.

Fill out completely with contractor or subcontractor address

Payrolls must be numbered sequentially and should be based on the weeks worked under a contract.

Type the word "Final" when the last payroll is submitted for the project.

Indicate the days and dates of the pay period. (should match week ending directly above)

The name and location of project.

The prime contractor should include the project number as listed in the loan



If part of a worker's weekly wage was earned on projects other than the project described on this payroll, enter the gross amount earned on this contract in the top half of column 7. Enter the gross amount earned during the week for all projects in the bottom half.

Alex Driver worked 29.5 hours on this contract and 12.5 hours on another contract.
The gross wages earned on this project, $1,422.84, is entered in the top half of column 7.
The gross wages earned on all projects, $2,012.46, is entered in the



If an employee performs multiple work classifications under the contract, use two or more lines to distinguish the different job classifications, hours worked, and hourly wage earned for each.

Combine the two classifications when recording the gross amount earned for this pay period, deductions, and net wages.



A registered apprentice performing work under a contract must be reported. The payroll must include the current pay scale & provide a copy of the apprenticeship agreement.

Provide explanation of "other" deductions on signatory page.

Fringe benefits are not paid as cash to Bart Turner: explanation is included under "(c) exceptions" on signatory page.

**PAYROLL**

Optional Use; See Instructions at www.dol.gov/esa/whd/forms/wh347

...are not required to respond to the collection of information unless it displays a currently valid OMB control number.

ADDRESS 385 West Drive, Madison WI 53703

PROJECT AND LOCATION
Robin Street Apartments, Delafield WI 53018

PROJECT OR CONTRACT NO.
3000

| (1) NAME AND INDIVIDUAL IDENTIFYING NUMBER (e.g., LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER) OF WORKER | (2) NO. OF WITHHOLDING EXEMPTIONS | (3) WORK CLASSIFICATION | OT OR ST | Sun 18 | Mon 19 | Tue 20 | Wed 21 | Thu 22 | Fri 23 | Sat 24 | (5) TOTAL HOURS | (6) RATE OF PAY | (7) GROSS AMOUNT EARNED | FICA | WITH-HOLDING TAX | State with-holding tax | Medicare | OTHER | TOTAL DEDUCTIONS | (9) NET WAGES PAID FOR WEEK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alex Driver - #### | 2 | Power Equipment Bull Dozer Group 2 | O | | | | | | 2.00 | | 2.00 | $62.83 | $1,422.84 | | | | | | | |
| | | | S | | 8.00 | 8.00 | 5.50 | 6.00 | | | 27.50 | $31.32 1585 | $2,012.46 | $161.00 | $185.15 | $156.97 | $50.31 | $85.00 | $638.43 | $1,374.03 |
| Jason Worker - #### | 2 | General Laborer | O | | | | | | 4.00 | | 4.00 | $49.20 | $1,700.78 | | | | | | | |
| | | | S | | 8.00 | 8.00 | 8.00 | 8.00 | | | 40.00 | $23.29 1441 | $1,700.78 | $136.06 | $156.47 | $132.66 | $42.52 | | $467.71 | $1,233.07 |
| Sharon Wood- #### | 3 | Carpenter | O | | | | | 1.50 | | | 1.50 | $60.19 | $1,887.49 | | | | | | | |
| | | | S | | 8.00 | 8.00 | 8.00 | 8.00 | | | 40.00 | $30.52 1441 | $1,887.49 | $151.00 | $154.77 | $128.35 | $47.19 | | $481.31 | $1,406.18 |
| Reggie Tree - #### | 1 | Apprentice Carpenter 1st 6 mo. at 40% | O | | | | | | | | | $32.72 | $1,064.72 | | | | | | | |
| | | | S | | 8.00 | 8.00 | 8.00 | 8.00 | | | 40.00 | $12.21 1441 | $1,064.72 | $85.18 | $105.41 | $90.50 | $26.62 | | $307.71 | $757.01 |
| Roy Wrench - #### | 5 | Plumber | O | | | | | | | | | $67.88 | $1,004.80 | | | | | | | |
| | | | S | | 8.00 | | 4.00 | 8.00 | | | 20.00 | $35.28 1496 | | | | | | | | |
| Roy Wrench - #### | 5 | Steamfitter | O | | | | | | | | | $69.13 | $1,038.40 | | | | | | | |
| | | | S | | | 8.00 | 4.00 | 4.00 | | | 20.00 | $34.41 1751 | $2,043.20 | $163.46 | $147.11 | $118.51 | $51.08 | | $480.16 | $1,563.04 |
| Bart Turner - #### | 1 | Power Equipment Rotary Drill Group 4 | O | | | | | | | | | $60.80 | $719.28 | | | | | | | |
| | | | S | | 8.00 | 8.00 | | 8.00 | | | 24.00 | $29.97 | $1,439.20 | $115.14 | $142.48 | $122.33 | $35.98 | | $415.93 | $1,023.27 |

(over)

Date _____ 04/28/2010 _____

I, _____ Tiffany Payer _____    _____ Payroll Supervisor _____
(Name of Signatory Party)              (Title)

do hereby state:

(1) That I pay or supervise the payment of the persons employed by
_____ Sample Construction Company _____    on the
(Contractor or Subcontractor)
_____ Robin Street Apartments, Delafield WI _____; that during the payroll period commencing on the
(Building or Work)
_18_ day of _4_    _2010_, and ending the _24_ day of _4_    _2010_,
all persons employed on said project have been paid the full weekly wages earned, that no rebates have
been or will be made either directly or indirectly to or on behalf of said
_____ Sample Construction Company _____    from the full
(Contractor or Subcontractor)
weekly wages earned by any person and that no deductions have been made either directly or indirectly
from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part
3 (29 C.F.R. Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948,
63 Start. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. § 3145), and described below:

Alex Driver - #### - other deductions - $85 for child support

Explanation of "other"

(2) That any payrolls otherwise under this contract required to be submitted for the above period are
correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the
applicable wage rates contained in any wage determination incorporated into the contract; that the
classifications set forth therein for each laborer or mechanic conform with the work he performed.

(3) That any apprentices employed in the above period are duly registered in a bona fide
apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of
Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a
State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

(4) That:
  (a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

  ☐ – in addition to the basic hourly wage rates paid to each laborer or mechanic listed in
      the above referenced payroll, payments of fringe benefits as listed in the contract
      have been or will be made to appropriate programs for the benefit of such
      employees, except as noted in section 4(c) below.

(b) WHERE FRINGE BENEFITS ARE PAID IN CASH

  ☑ – Each laborer or mechanic listed in the above referenced payroll has been paid,
      as indicated on the payroll, an amount not less than the sum of the applicable
      basic hourly wage rate plus the amount of the required fringe benefits as listed
      in the contract, except as noted in section 4(c) below.

(c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
| Power Equipment Rotary Drill Group 4 | paid directly to plan: health & dental at $12.50 per hour and Pension at $6.25 per hour |
| | |
| | |
| | |
| | |
| | |

Explanation of exception to fringe benefits

REMARKS:

NAME AND TITLE
Robert Sample, Owner

SIGNATURE

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR
SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE
31 OF THE UNITED STATES CODE.

Fill in as seen here if covering the DBA fringe rate using both a cash equivalent and a fringe benefit equivalent.

Date _____09/23/2009_____

I, _____Sam Harrison_____        _____Payroll Coordinator_____
        (Name of Signatory Party)                         (Title)

do hereby state:

(1) That I pay or supervise the payment of the persons employed by

_____Jack Smith DBA Energy Savers Contractors_____ on the
                (Contractor or Subcontractor)

_____DOE ARRA WAP Work_____ ; that during the payroll period commencing on the
        (Building or Work)

__14__ day of __9__ , __2009__ , and ending the __18__ day of __9__ , __2009__ ,

all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said

_____Jack Smith DBA Energy Savers Contractors_____ from the full
                (Contractor or Subcontractor)

weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 C.F.R. Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Start. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. § 3145), and described below:

See deductions column in payroll form.

_____

_____

_____

(2) That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.

(3) That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

(4) That:
(a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

[☑] – in addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in section 4(c) below.

Check if either (1) covering all of the DBA fringe rate with fringe benefits paid on behalf of worker to an approved fund, plan or program OR (2) if, as in this sample, covering the DBA fringe rate using both fringe benefits paid on behalf of worker to an approved fund, plan or program AND cash paid to worker in lieu of.

(b) WHERE FRINGE BENEFITS ARE PAID IN CASH

[ ] – Each laborer or mechanic listed in the above referenced payroll has been paid, as indicated on the payroll, an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in section 4(c) below.

(c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
| Ralph Brown fringe benefits as Weatherization Worker for 9/14, 9/16 and 9/18 | Cash in lieu $1.00; benefits equal $0.80 |
| Ralph Brown fringe benefits as D&W Weatherization Worker for 9/15, 9/17 | Cash in lieu $0.35; benefits equal $0.80 |
| Jim Dodge fringe benefits as Weatherization Worker for 9/14, 9/16 and 9/18 | Cash in lieu $1.00; benefits equal $0.80 |
| Jim Dodge fringe benefits as Weatherization Worker for 9/15, 9/17 | Cash in lieu $0.42; benefits equal $0.80 |
| | |
| | |
| | |
| | |

| REMARKS: |
|---|
| |

| NAME AND TITLE | SIGNATURE |
|---|---|
| Sam Harrison, Payroll Coordinator | |

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

# CERTIFIED PAYROLL TRANSMITTAL

1. SUBCONTRACTOR NAME:_____

      a). 2ND OR 3RD TIER SUBCONTRACTOR:     YES     NO

      b). IF YES, EMPLOYED BY: _____

2. PAYROLL REPORT NO: _____

3. PAYROLL REPORT PERIOD: STARTING_____ENDING_____

4. NUMBER OF EMPLOYEES WORKING: _____

5. TOTAL "STRAIGHT TIME" HOURS WORKED: _____

6. TOTAL "OVERTIME" HOURS WORKED: _____

7. TOTAL COMBINED HOURS WORKED: _____


THE FOLLOWING FORMS HAVE BEEN INCLUDED: (CHECK ALL THAT APPLY)


_____ WH-347 CERTIFIED PAYROLL REPORT


_____ DD-879 STATEMENT OF COMPLIANCE


_____ NO WORK PERFORMED PAYROLL REPORT

PRINTED NAME

SIGNATURE

DATE



# **EXHIBIT 11**

## Buy American Act

https://www.acquisition.gov/content/52225-reserved



# EXHIBIT 12

## LEEBCOR SERVICES, LLC

## REQUIRED TYPES AND LEVELS OF INSURANCE COVERAGE

**A.  Statutory Workers' Compensation and Occupational Disease Insurance**

Statutory Workers' Compensation and Occupational Disease Insurance shall be in such amounts as are in full compliance with the applicable state Workers' Compensation Act and state Occupational Disease Act, in which the work is to be performed.  All Subcontractors shall carry a Workers' Compensation policy whether or not such Subcontractors have any employees. Coverage must be provided for all employees and officers of the Subcontractor.

**B.  Employer's Liability Insurance**

Employers Liability Insurance shall have limits no less than the following minimum requirements:

| | |
|---|---|
| Bodily Injury by Accident: | $500,000 each accident |
| Bodily Injury by Disease: | $500,000 each employee |
| Bodily Injury by Disease | $500,000 policy limit |

**C.  Commercial General Liability Insurance**

Commercial General Liability Insurance with bodily injury and property damage coverages shall have limits no less than the following minimum requirements:

| | |
|---|---|
| Each Occurrence Limit: | $1,000,000 |
| General Aggregate Limit: | $2,000,000 |
| Products/Completed Operations Aggregate Limit: | $2,000,000 |
| Personal and Advertising Injury Limit: | $1,000,000 |
| Contractual Liability Limit: | $1,000,000 |



**D.  Commercial Automobile Liability Insurance**

Commercial Automobile Liability Insurance with bodily injury and property damage coverages for all owned, hired, leased, rented, and non-owned automobiles shall have no less than the following minimum requirements:

Liability Limit:                                    $1,000,000

Uninsured Motorists Limit:                  $1,000,000

Hired Car and Non-Owned Liability:     $1,000,000

*If the Subcontractor will be transporting or hauling waste or hazardous material, the automobile policy must have a MCS-90 endorsement.*

**E.  Umbrella Liability Insurance**

Umbrella Liability Insurance with bodily injury and property damage coverages shall have limits no less than the following minimum requirements.  Coverage shall be in excess of Employers Liability, General Liability, and Automobile Liability minimum limits specified above.

Each Occurrence Limit:                        $1,000,000

General Aggregate Limit:                     $1,000,000

**F.  Professional Liability**

*Required if the Subcontractor will be professionally certifying a work product such as drawings, plans, permit applications, etc., or performing professional services such as surveying or testing, where an error or omission could affect the design of a project or impact a construction schedule*

Each Occurrence Limit:                        $1,000,000

General Aggregate Limit:                     $1,000,000

**G.  Pollution Liability**

*Required if the Subcontractor will be performing testing services and/or soil analysis which requires drilling beyond a depth of two feet, or transporting or hauling hazardous waste.*



Each Occurrence Limit:                    $1,000,000

General Aggregate Limit:                  $1,000,000

**H.  General Requirements**

Subcontractor will provide Leebcor Services, LLC. one or more certificates of insurance.  These certificates will indicate coverage currently in force.  Each certificate must contain the following information:

1. Policy Number, Insurance Carrier, Inception and Expiration Date(s).
2. Leebcor Services, LLC. and Leebcor's Client are named as Additional Insured on the Commercial General Liability policy including coverage for Products and Completed Operations, per form CG 2010 11 85, or a combination of CG 2010 10 01 and CG 2037 10 01, or its equivalent.  Coverage will be on a primary and non-contributory basis.  Aggregate limits apply per project. Subcontractor will continue coverage for two years after the completion of the project.
3. Waiver of Subrogation on behalf of Leebcor Services, LLC. for General Liability and Workers' Compensation policies.
4. 30 days prior notice in the event of cancellation or non-renewal of coverage, except for non-payment of premium which will be 15 days.
5. Reference project name and number on certificate.

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : | | |
| INSURED | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES        CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS  SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS  NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB  OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB  CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | | | | | WC STATU-TORY LIMITS ☐ OTH-ER ☐ | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICE/MEMBER EXCLUDED?  N / A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | | | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)        The ACORD name and logo are registered marks of ACORD